UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THOMAS SOLOMAN VANN, JR.                                                    PLAINTIFF

CIVIL NO. 3:21-CV-305-DPJ-ASH

CITY OF MERIDIAN et al.                                                    DEFENDANTS

ORDER

Thomas Soloman Vann, Jr., sued the City of Meridian and his former supervisors on the

police force, alleging unlawful racial discrimination and retaliation under Title VII along with

First Amendment and due-process violations under 42 U.S.C. § 1983.  Defendants move for

summary judgment [49], which is granted in part and denied in part.

I.        Facts and Proceedings

Vann, a Black man, became a Meridian patrolman in 2008, then earned promotion to

corporal in 2011 and moved to the criminal-investigation division (CID) in 2013.  Fourth

Amended Complaint [42] ¶¶ 5–6.  In 2019, Vann passed his exams to qualify for the positions of

sergeant and lieutenant, making him eligible for such promotions for one year, until June 2020.

Mot. Exh. A [49-1] (affidavit of Chrissie Walker) ¶¶ 4–5.  He never received a promotion.  *Id*.

¶¶ 6, 9–11.  The City says Vann couldn't have been promoted to those positions after that

because his eligibility expired and he didn't retake the exams.  Mot. Exh. A [49-1] ¶¶ 7–8.

In February 2021—half a year after his eligibility expired—three white men were

promoted to lieutenant, and a white woman was made a lieutenant in June 2022.  Defs.' Mem.

[50] at 4.  According to Vann, the City also promoted another white officer, Keith Moody, to

lieutenant.  Pl.'s Mem. [55] at 6; Vann Aff. [54-1] at 6; Defs.' Reply [57] at 5 (calling it an

"alleged promotion").[1]

In October 2020, Vann informed his supervisor that he intended to file an EEOC charge

of racial discrimination for failure to promote.  Pl.'s Resp. Exh. 3 [54-3] at 1.[2]  He then filed that

charge on January 9, 2021, alleging discrimination and retaliation under Title VII for the City's

failure to promote him to sergeant or lieutenant.  Mot. Exh. E [49-5] (charge).  After that, Vann's

attorney sent the City a January 14, 2021 letter stating Vann's intent to sue both the City and

Defendant Chris Read, the police chief.  Compl. Exh. B [1-2].

On March 31, 2021, Chief Read transferred Vann from CID to a patrol unit effective

April 7, allegedly to fill a shortage of patrol officers.  Mot. Exh. A [49-1] at 14; *id*. Exh. B [49-2]

(declaration of Chris Read) ¶ 7.  One of seven officers newly assigned to this unit, Vann retained

his title of corporal and his pay rate.  *Id*. Exh. A [49-1] ¶¶ 19, 20, 25.  In making his decision, the

chief consulted Defendant Patrick Gale, who was then Vann's commanding officer.  *Id*. Exh. B

[49-2] ¶ 6.

After receiving his right-to-sue letter from the EEOC on February 10, 2021, Vann sued

the City and Chief Read on April 30, 2021.  Compl. [1] & Exh. A [1-1] (letter).  Three weeks

later, Chief Read, Gale, "and others" found case evidence stored in Vann's personal locker,

including a firearm, ammunition, and "evidence from an ongoing murder investigation."  Mot.

---

[1] It is not clear when this promotion occurred, but it was before July 7, 2020.  Vann says in his memorandum that Moody was promoted July 1, 2020.  *Id*.  But he cites his own affidavit for that fact, and his affidavit does not give a date.  *Id*. (citing Pl.'s Resp. Exh. 1 [54-1] at 6).  The affidavit does, however, cite an email Moody signed as lieutenant on July 7, 2020.  *See* Vann Aff. [54-1] at 6 (citing [54-2] at 49).

[2] Both sides' pagination of documents is erratic; the Court will use ECF page numbers.

Exh. B [49-2] ¶¶ 13–14.  That conduct allegedly violated department policy, and Vann's

employment was eventually terminated effective February 23, 2022.  Mot. Exh. D [49-4]

(affidavit of Deborah Young) ¶ 8; Mot. Exh. A [49-1] at 19–20.

Vann filed a second EEOC charge in July 2022 alleging discrimination and retaliation in

his reassignment and firing.  *Id*. Exh. F [49-6].  Meanwhile, Vann also appealed his termination

to the City's Civil Service Commission.  *Id*. Exh. G [49-7] (notice of appeal).  At a May 2022

hearing, the commission unanimously held that Vann failed to "handle evidence properly in

violation of procedures, particularly that the handgun didn't have ties on it and the ammunition

was placed with the gun in his locker rather than in the evidence bay."  *Id*. Exh. H [49-8]

(hearing transcript) at 78–79; Pl.'s Resp. Exh. 4 [54-4] at 78 (order).  It further found that "the

termination was not the result of political considerations, nor was it the result of any form of

discrimination."  *Id.*  Vann appealed that ruling to circuit court, arguing that the termination was

retaliatory.  *Id*. Exh. J [49-10] (Vann's brief).  The circuit court disagreed and affirmed the

commission's ruling in April 2024.  *Id*. Exh. L [49-12] (order).

Vann also filed two cases in this Court.  He first sued under the present docket number

(*Vann I*) and amended that complaint three times.  Fearing that the Court would not allow a

fourth, he instead filed another suit against Defendants as No. 3:22-cv-658 (*Vann II*).  In August

2023, the Court entered an order [15] in *Vann II* dismissing some claims and consolidating the

rest with *Vann I*.  Vann then filed a fourth ("Final") amended complaint [42] against the City

plus Read, Dale, and Young in their individual capacities.

It took time to identify Vann's claims.  But in October 2023, the parties stipulated [43]

that Vann pursues only these causes of action:

     a. **Failure to promote under Title VII.**  This claim is limited to promotions of police officers to the positions of sergeant and/or lieutenant between the dates of July 18, 2020 and January 14, 2021.  This claim is asserted against the City only.

     b. **Retaliatory demotion and termination under Title VII.**  This claim is asserted against the City only.

     c. **First Amendment retaliatory demotion and termination under 42 U.S.C. 1983.**  This claim is asserted against all defendants.

     d. **Due process violation under 42 U.S.C. 1983.**  This claim is asserted against all defendants.

Stip. [43] at 2.  Defendants now seek summary judgment on all four.

II.     Standard

     Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[ ] and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

     The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Catrett*, 477 U.S. at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods.,*

*Inc.*, 530 U.S. 133, 150 (2000).  It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little*, 37 F.3d at 1075.

Two more points are necessary with respect to Vann's evidence and supporting memorandum.  First, Vann offers his own affidavit to oppose summary judgment.  There is nothing wrong with that, except the affidavit is filled with conclusory assertions and statements that lack any apparent foundation for personal knowledge.  So too, the affidavit sometimes cites record evidence unrelated to the statements it supposedly supports.  And other record cites simply don't support the stated positions.  Mixed in are alleged facts that do not have apparent relevance.

And that leads to the second problem.  The affidavit offers a stream-of-consciousness account and attaches a largish record, making it difficult to put the alleged facts into legal context.  Yet Vann writes in his summary-judgment memorandum that "[t]he demands of time require that Vann not make explicit reference to these facts and documents in this Memorandum."  Pl.'s Mem. [55] at 1.

Rule 56 requires more.  The non-movant must "articulate the precise manner in which the submitted or identified evidence supports his or her claim."  *Smith ex rel. Est. of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).  In other words, the non-movant must generally "identify specific evidence in the record and articulate the manner in which that evidence

supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (citation omitted).  Vann didn't do that.  That said, the Court must still consider what he submitted and determine whether Defendants are entitled to summary judgment.  While it is not the Court's intent to do Plaintiff's work for him, it is still required to consider whether Defendants' arguments are legally correct and supported by the record evidence.

III.     Discussion

      A.     Title VII Claims

As stipulated, Vann pursues three Title VII claims:  failure to promote, retaliatory demotion, and retaliatory termination.  Stip. [43] at 2.  These stipulations are treated like pretrial stipulations under Federal Rule of Civil Procedure 16.  *United States v. One 1978 Bell Jet Ranger Helicopter*, 707 F.2d 461, 462–63 (11th Cir. 1983).

      1.     Failure to Promote

Under the stipulations, the failure-to-promote claim relates to promotions to sergeant or lieutenant from July 18, 2020, to January 14, 2021.  *Id.*  Title VII of the Civil Rights Act of 1964 prohibits most employers from discriminating against employees on various grounds including race.  *See generally* 42 U.S.C. § 2000e *et seq.*  When, as here, a plaintiff makes a circumstantial claim for failure to promote under Title VII, the court follows the *McDonnell Douglas* burden-shifting analysis which starts with the plaintiff's duty to show a prima facie case.

There is, however, some ambiguity regarding the prima facie case.  The most typical articulation is the one Defendants cite, and it requires a showing that:  "(1) [the plaintiff] was within a protected class; (2) [he] was qualified for the position sought; (3) [he] was not promoted; and (4) the position [he] sought was filled by someone outside the protected class." *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001).  The City says Vann fails to

prove the second and fourth elements because the stipulation limits this claim to promotion decisions between July 18, 2020, and January 14, 2021; his eligibility expired before that range; and no one else was hired during that time.  Defs.' Mem. [50] at 14.

Given those parameters, Vann might not satisfy the prima facie case as the City describes it.  But the fourth element of the City's cited prima facie test is not the only version.  The test originated in *McDonnell Douglas Corp. v. Green*, which held that the fourth element requires a showing that "after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."  411 U.S. 792, 802 (1973); *see Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 324 (5th Cir. 2002) (applying same test).

That courts have used different prima facie tests in different cases is no surprise.  In announcing the test used in *McDonnell Douglas*, the Supreme Court stressed that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."  *Id.* n.13.  Thus, the "*McDonnell Douglas* rule was intended to be a flexible one." *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1100 (5th Cir. 1985).  Which is why some Fifth Circuit cases offer an even broader fourth element, saying the plaintiff must show "the defendant either gave the promotion to someone outside of that protected class *or otherwise failed to promote the plaintiff because of his race*."  *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013) (emphasis added); *accord Pratt v. City of Houston*, 247 F.3d 601, 606 n.2 (5th Cir. 2001).

Vann never mentions the elements of his prima facie case in his memorandum.  He says instead:  "As to Defendants' arguments of no prima facie case, failure to promote, failure to show an individual outside his protected class was promoted, [they] are all challenged by Vann's

Affidavit and supporting documents," 240 pages in all.  *See* Pl.'s Mem. [55] at 7.  But the Court must still determine whether the City's legal arguments entitle it to summary judgment.  They don't.

Given the unusual circumstance created by the stipulated date range, the second and fourth elements are somewhat related.  Starting with the second, the City argues that Vann was not qualified for promotion because "the promotion eligibility lists expired in early June, 2020," thus before the stipulated July 2020 to January 2021 timeframe for failure-to-promote claims. Defs.' Reply [57] at 5.  Vann, however, asserts that officers were promoted despite there being "no promotion examinations taken and no Promotion Eligibility List for those positions."  Vann Aff. [54-1] at 3.  Not all of Vann's examples seem convincing or even accurate.  But Vann alleges that a white officer, Keith Moody, was promoted to lieutenant in July 2020 even though the eligibility list for that position had expired.  *Id.* at 5; Mot. Exh. E [49-5]; *id*. Exh. H [49-8] at 20 (Vann's testimony re:  Moody).

The City never rebuts the allegation that Moody was promoted after the eligibility list expired, saying only that the "alleged promotion" occurred outside the stipulated timeframe. Defs.' Reply [57] at 5.  But the parties' stipulation did not limit the relevant evidence to events during the stipulated period; it limited the claims to alleged failures to promote during that time. For that reason, the Court may consider whether the eligibility-list requirement was followed in Moody's case—Vann says it wasn't, and the City does not say it was.  Viewed in the light most favorable to Vann, Moody's promotion after the list expired creates a genuine controversy whether Vann was qualified under element two after the eligibility list expired.

As to the fourth element, the City maintains that it promoted no one else during the stipulated period, so the positions Vann wanted weren't filled by anyone, let alone someone

outside his protected class.  But as noted, there is more than one way to satisfy the fourth

element, including proof that the employer left the position open while seeking applicants, *Perez*,

307 F.3d at 324, "or otherwise failed to promote the plaintiff because of his race," *Autry*, 704

F.3d at 347.  Vann states that during the stipulated period, "numerous Sergeants, Lieutenants and

Captain positions remained unfilled."  Vann Aff. [54-1] at 2; *see also id.* at 6 (stating that

vacancies existed).  And he says positions were filled around the stipulated dates.  Given that and

the alleged disparate treatment afforded Moody, a question of fact exists on the fourth element.

Vann has met his burden at the prima facie stage.

When that happens, the defendant must then "proffer a legitimate, nondiscriminatory

reason for the challenged employment action."  *Blow*, 236 F.3d at 297.  This burden is one of

production, not persuasion.  *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.

2000) (explaining employer's burden).  To meet that burden, the City again states that the

eligibility list expired before promotions occurred.

That satisfies the City's burden, *id.*, so the burden returns to Vann to show that the City's

reason is pretextual.  *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d

137, 140 (5th Cir. 1996).  "A plaintiff may establish pretext either through evidence of disparate

treatment or by showing that the employer's proffered explanation is false or 'unworthy of

credence.'"  *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist

Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).  Such evidence "is likely to support an inference

of discrimination even without further evidence of [the] defendant's true motive."  *Id.*

Vann's pretext argument merely references his affidavit.  *See* Pl.'s Mem. [55] at 7.  But

in that affidavit, he explains that Moody—a white officer—was allowed promotion even though

the eligibility list had expired for the position.  If true, that would cast doubt on the City's

contention that it did not promote Vann because his list expired.  *Laxton*, 333 F.3d at 578.  On this record, Vann has created a question of fact on pretext.  Summary judgment is therefore denied on his Title VII failure-to-promote claim.[3]

        2.     Retaliatory Demotion

Vann filed an EEOC charge based on the failed promotion, after which the City transferred him from CID to patrol.  Vann says the move was a retaliatory demotion; the City seeks summary judgment on procedural and substantive grounds.

**Did Vann Exhaust the Retaliatory-Transfer Claim?**  The City first argues that Vann failed to exhaust his administrative remedies.  "Before seeking judicial relief, . . . Title VII plaintiffs are required to exhaust their administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the alleged discrimination."  *Davis v. Fort Bend County*, 893 F.3d 300, 303 (5th Cir. 2018).

As noted, Vann filed an EEOC charge regarding the promotion claims, but he neither amended his charge nor filed a new one alleging that the transfer was retaliatory until long after suing the City.  There is, however, an exception to the exhaustion requirement.  Under *Gupta v. East Texas State University*, a new EEOC charge is unnecessary if the plaintiff alleges retaliation that "grows out of an administrative charge that is properly before the court."  654 F.2d 411, 414 (5th Cir. 1981).  The City hopes to distinguish *Gupta* in two ways.

First, it correctly notes that the Fifth Circuit "has not applied the *Gupta* exception to claims in which both retaliation and discrimination are alleged."  *Simmons-Myers v. Caesars Ent.*

---

[3] Vann's thin analysis on this and other issues created a close call.  But "even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'a better course would be to proceed to a full trial.'"  *Kunin v. Feofanov*, 69 F.3d 59, 62 (5th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986)).

*Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013); *accord Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 370 (5th Cir. 2017).  And according to the City, "[e]very iteration of Plaintiff's complaint . . . asserts claims for both discrimination and retaliation under Title VII."  Defs.' Mem. [50] at 19.

That's true.  For example, the promotion claim is based on race.  But *Simmons-Myers* relates to "*claims* in which both retaliation and discrimination are alleged."  515 F. App'x at 273 (emphasis added).  That's because "[p]ermitting simultaneous proceedings such as these *for the same inciting event* would 'thwart the administrative process and peremptorily substitute litigation for conciliation.'"  *Id.* at 274 (emphasis added) (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)).  So "the *Gupta* exception does not apply when a plaintiff alleges that the same adverse employment action was the result of both discrimination and retaliation."  *Winn v. Cleburne Indep. Sch. Dist.*, No. 3:18-CV-2949, 2020 WL 5291941, at *7 (N.D. Tex. Sept. 3, 2020) (citing *Simmons-Myers*, 515 F. App'x at 273–74).

Vann's earlier pleadings were difficult to untangle, but his final Complaint did not appear to assert a discrimination claim based on the transfer, an incident he described under the heading "Retaliation."  *See* Fourth Am. Compl. [42] ¶ 14.  The parties even stipulated "as to the legal claims asserted in Plaintiff's 'Final Amended Complaint,'" agreeing that the demotion claim is limited to alleged retaliation.  Stip. [43] at 2 (capitalization altered).  Retaliation is therefore the only basis for the transfer-related claim.  That distinguishes the City's authority.

The City also says that *Gupta* does not apply when the disputed retaliation occurs before suit is filed.  Defs.' Mem. [50] at 18 (citing *Carter v. Yazoo City,* No. 3:18-CV-467-DPJ-FKB, 2020 WL 13682497, at *8 n.8 (S.D. Miss. Jan. 28, 2020)).  *Carter* did suggest that argument in a poorly worded, if not incorrect, footnote.  *Gupta* applies when the retaliation claim "grows out of

11

an administrative charge that is properly before the court."  654 F.2d at 414.  "Properly before the court" does not mean the Court has secured subject-matter jurisdiction before the incident occurs; it means there is another Title VII claim to which the retaliation charge can "attach itself."  *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 480 (5th Cir. 1991) (holding that court could not exercise ancillary (now supplemental) jurisdiction over unexhausted retaliation claim when other Title VII claims were untimely or unexhausted and thus not properly before the court).  At any rate, the Fifth Circuit has found the *Gupta* exception applicable when the retaliation occurred after the protected activity but before suit.  *See Alcala v. Harvey*, 251 F. App'x 274, 278 n.4 (5th Cir. 2007); *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007); *E.E.O.C. v. Wal-Mart Stores, Inc.*, 154 F.3d 417 at *11 (5th Cir. 1998) (unpub. op).

**Does Vann Survive Burden-Shifting Analysis?**  "To present a prima facie case of retaliation under [Title VII], a plaintiff must show that:  (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action."  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (italics omitted) (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)).  If the plaintiff meets this test, then, as with failure to promote, the employer has the burden to produce a legitimate, non-retaliatory reason for the adverse action.  If it does, the burden shifts back to the plaintiff to show pretext and ultimately that retaliation was the but-for cause of the adverse action.  *Willis*, 749 F.3d at 317–18.

The City acknowledges Vann's protected activity but focuses on elements two and three. Starting with the second, the adverse action must be "materially adverse," that is, substantial enough to "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation

omitted).  "Under this less demanding standard, 'a lateral reassignment to a position with equal

pay could amount to a materially adverse action in some circumstances.'"  *Johnson v. Halstead*,

916 F.3d 410, 420 (5th Cir. 2019) (quoting *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473,

485 (5th Cir. 2008)).  To determine whether it does,

> the court looks to indicia such as whether the action affected job title, grade,
> hours, salary, or benefits or caused "a diminution in prestige or change in standing
> among [ ] co-workers."  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th
> Cir. 2009).  A mere reassignment, standing alone, does not constitute a materially
> adverse employment action.  *See id.* (holding reassignment to a new supervisor
> with a heavier workload was not a materially adverse employment action); *see
> also Anthony v. Donahoe*, 460 F. App'x 399, 404 (5th Cir. 2012) (per curiam)
> (temporary transfer due to emergency circumstances that did not result in change
> to salary or benefits was not a retaliatory employment action).  Whether a
> reassignment "is materially adverse depends upon the circumstances of the
> particular case," and the reassignment should be evaluated from the perspective of
> a reasonable person in the plaintiff's position.  *Anthony*, 460 F. App'x at 404
> (quoting *Burlington*, 548 U.S. at 71).

*Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630, 2023 WL 6878915, at *6 (5th Cir. Oct.

18, 2023) (unpub.).

As the City notes, Vann kept his rank and salary.  But Vann offers evidence that his title

changed because officers in CID were called detectives.  Vann Aff. [54-1] at 9; *id.* Exh. 2 [54-2]

at 3 (email).  He also notes that detectives received a clothing allowance which he lost when

transferred.  *Id.* Exh. 3 [54-3] at 7 (Mar. 30, 2021 letter).  The City also moved Vann to night

shifts.  *Id.*; *see also id.* Exh. 1 [54-1] at 9.  "A shift change in and of itself is probably not

sufficient[,] . . . [b]ut a retaliatory shift change that places a substantial burden on the plaintiff,

such as significant interference with outside responsibilities or drastically and objectively less

desirable hours, can dissuade an employee from reporting discrimination."  *Johnson*, 916 F.3d at

420 (noting that change to night shift could dissuade reasonable employee from complaining)

(citations omitted).  Viewing the evidence in the light most favorable to Vann—as Rule 56

requires—the Court holds that a reasonable person could find that reassignment from detective to patrol officer on the night shift is a materially adverse action.

As to the third element—causal link—"[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis omitted) (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). The City argues that Vann gave notice of his intent to file an EEOC charge in November 7, 2020, and was not actually transferred until April 7, 2021. Defs.' Mem. [50] at 21. But Vann's EEOC charge constitutes protected activity, and he filed it January 9, 2021. Mot. Exh. E [49-5] (charge). His notice of suit was then sent January 14, 2021. Compl. Exh. B [1-2]. By March 30, about two and a half months later, Vann learned he was being reassigned to patrol.

While the causation standard stiffens at the final stage of the analysis, a temporal proximity of "roughly two and a half months . . . allow[s] for an inference of causation." *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007); *see also Turner v. Goodwill Indus. of Houston*, No. 4:12-CV-1620, 2014 WL 3543723, at *9 (S.D. Tex. July 17, 2014) (finding an eleven-week interval satisfied third element of prima facie case). The Court finds that Vann has stated a prima facie case.

The burden therefore shifts to the City to offer a reason for the transfer that if "*taken as true* would *permit* the conclusion that there was a [non-retaliatory] reason for the adverse action." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (emphasis in orig.) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). The City says "[t]he decision to transfer Plaintiff was part of a broader effort to bolster a deficiency in patrolman [*sic*], which was caused by uncommonly high turnover in the Department." Defs.' Mem. [50] at 22. Vann was

14

one of seven new officers assigned to Delta Platoon during that period.  Mot. Exh. A [49-1] ¶ 25.
That reason meets the City's burden of production, so Vann must show pretext.

"Pretext can be proven by any evidence that casts doubt on the credence of the
employer's proffered justification for the adverse employment action." *Brown v. Wal-Mart
Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020).  But a "plaintiff must put forward evidence
rebutting each of the non[-retaliatory] reasons the employer articulates." *Wallace*, 271 F.3d at
220.  And ultimately, Vann must show that retaliation was the but-for cause of the transfer.
*Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243–44 (5th Cir. 2019).

For starters, the temporal proximity between the EEOC charge and the transfer is relevant
but "'alone is insufficient' to survive summary judgment at the pretext stage in the absence of
'other significant evidence of pretext.'" *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 564 (5th Cir.
2019), *as revised* (Dec. 10, 2019; Dec. 23, 2019) (quoting *United States ex rel. King v. Solvay
Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017)).

Vann does offer other evidence, starting with a remark from one of the officers who made
the transfer decision.  According to Vann, he discussed the transfer with Lieutenant Gale, who
responded that he was "tired of [Vann's] shit."  Vann Aff. [54-1] at 9.  Defendants correctly
argue that this statement would not constitute direct evidence of retaliation.  *See* Defs.' Reply
[57] at 2; *see also Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996) (discussing four-
part test for statements constituting direct evidence), *abrogated on other grounds by Reeves*, 530
U.S. at 151.  But Vann never suggests that it does.  He pursues a circumstantial case.

According to the Fifth Circuit, the remark could provide circumstantial evidence of
retaliatory intent if the content "indicates" retaliatory animus and the speaker was "primarily
responsible for" the adverse action.  *Russell*, 235 F.3d at 226.  The City acknowledges Gale's

role in the transfer decision, so the second factor is satisfied.  Defs.' Mem. [50] at 23.  As to the first factor, the City says Vann should have deposed Gale to confirm that he made the statement and if so what it meant.  Defs.' Reply [57] at 3.  But Vann's affidavit is sufficient proof that the statement occurred, and though vague, the statement could indicate retaliatory motive.  Even if it doesn't, the statement still conflicts with the City's proffered reason for the decision—that Vann was transferred to fill a void.  "A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct."  *Nasti v. CIBA Specialty Chem. Corp.*, 492 F.3d 589, 594 (5th Cir. 2007) (citing *Read v. BT Alex Brown Inc.*, 72 F. App'x 112, 120 (5th Cir. 2003)).[4]

Conflicts aside, if Gale's alleged remark meets the *Russell* test, it is probative of retaliatory intent only if coupled with other evidence.  *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003).  And again, Vann does suggest other evidence:

> 1) At the time I was the senior and most productive Detective.  (2) Lieutenant Gale, Sergeant Sanders, Corporal Robinson and Corporal Taylor were all recently reassigned from Delta Platoon to CID (Exhibit Documents, Part 2, One, pp 9, 11).  Lt Gale, Corporal R. Robinson and Corporal Taylor had no CID training.  (3) There was an entire platoon listed as ICE/Special Operations consisting of junior officers who could have easily transitioned to patrol (Exhibit Documents, Part 2, One, p. 11).  (4) When I arrived to Delta Platoon, Lt Billy Jenkins, Sergeant Hardaway, Senior Patrol Officers, D. Goucher, F Newell, C. Fairchild, M. Carter, X. Gowdy and Officer Griffin, contrary to the statements of Chief Read and Assistant Chief Gale there were only two (2).  (Exhibit Documents, Part 2, One, p. 8.)

> Furthermore, Vann's seniority would have required, if not for retaliation, an assignment on a day shift.  Other junior officers on day shifts could have been moved to Delta Platoon.

---

[4] Vann also alleges that the other primary decisionmaker, Read, called him out during a CID meeting, saying "Do I need to get a lawyer?" when Vann asked a question about what Read had told the group.  Vann Aff. [54-1] at 8.  The affidavit is unclear whether Read knew of Vann's intent to sue before that meeting, so the Court does not rely on the comment.  That said, it could add weight at trial if a proper foundation is laid.

Pl.'s Mem. [55] at 8 (paraphrasing Vann Aff. [54-1] at 9–10).

The City did not address most of these points in reply.  It argued instead—and understandably so—that "Plaintiff did not even argue that the City's stated non-discriminatory reason for transfer was pretext.  Therefore, regardless of whether Plaintiff can establish a prima facie case, the City is entitled to summary judgment on Plaintiff's Title VII transfer claim." Defs.' Reply [57] at 8.  Vann's response did skip the legal framework for this claim and never used the word "pretext."  But even if he failed to properly package the argument, he did challenge the City's stated reason for the transfer and cited facts to support his claim that the "demotion and reassignment were retaliation."  Pl.'s Mem. [55] at 8 ; *see also* Vann Aff. [54-1] at 9–11.

As to those facts, Vann never rebuts the City's contention that transfers occurred due to "uncommonly high turnover in the Department."  Defs.' Mem. [50] at 22.  The question though is whether Vann has shown that but for the alleged retaliation he would not have been the one picked for the transfer.  Along with the temporal proximity and Gale's statement, there is evidence from which a jury could make that finding.  Primarily, Vann cites records showing that Gale, Sanders, and Robinson were all transferred from Delta to CID in late 2020, just months before he was transferred out.  Pl.'s Resp. Exh. 2 [54-2] at 9, 11 (duty rosters) & 10 (Oct. 20, 2020 email noting Gale named CID commander).  And the City does not rebut his argument that he was transferred despite his seniority and then received a less favorable shift despite his seniority.  For these reasons, the Court concludes that Vann has met his final burden on the retaliatory-transfer claim.

3.      Retaliatory Termination

Vann's final claim under Title VII asserts that retaliation motivated the termination of his employment rather than the alleged mishandling of evidence.  *See* Stip. [43] at 2.  While there are merits-based problems with this claim, the City correctly argues that Vann lost his right to pursue this claim in federal court when the state court affirmed his termination.  Defs.' Mem. [50] at 22–23.

Defendants' preclusion argument rests on *Winn v. City of New Orleans*, where the Fifth Circuit affirmed summary judgment of a police officer's First Amendment retaliation claim because the New Orleans Civil Service Commission ruled that he was fired for good cause.  620 F. App'x 270, 272 (5th Cir. 2015) (applying Louisiana preclusion law).

The Fifth Circuit recently applied *Winn* to a Title VII retaliation claim in *Morales v. New Orleans City*, No. 23-30340, 2024 WL 3026779, at *6 (5th Cir. June 17, 2024).  Morales claimed that she was fired for engaging in a protected activity.  *Id.* at *2.  But the city's commission found good cause.  *Id.*  She then appealed to state court, but that court "observed that 'the CSC denied [her] appeal based solely on its finding that the OIG had good cause to terminate [her] for the [alleged] violation.'"  *Id.* (quoting *Morales v. OIG*, 366 So. 3d 526, 533 n.7 (La. Ct. App. 4th Cir. 2022)).  On that basis, the Fifth Circuit affirmed summary judgment, again under Louisiana's preclusion law.  *Id.* at *3.  The court noted that based on the state proceedings, it was "impossible for [Morales] to prove pretext by a preponderance of the evidence" since she could not rebut '*each* nonretaliatory reason articulated by the employer.'"  *Id.* at *6 (quoting *Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021)).

Vann correctly notes that Mississippi law applies here but incorrectly claims that no preclusion occurred because under Mississippi law the issue must be "actually litigated" to be

precluded.  Pl.'s Mem. [55] at 2.  To begin, Mississippi law "precludes relitigation of

administrative decisions."  *Davis v. Att'y Gen.*, 935 So. 2d 856, 863 (Miss. 2006) (citation

omitted).  But contrary to Vann's point, plaintiffs are precluded from bringing issues decided in

the initial proceeding as well as those "that might have been (or could have been) raised and

decided" there.  *Id*. (citation omitted).  The "actually litigated" requirement applies to collateral

estoppel, not to res judicata.  *Smith v. Malouf*, 826 So. 2d 1256, 1259 (Miss. 2002).

In any event, Vann did litigate this issue.  The Commission found that he was fired for

good cause related to the handling of evidence and that it "was not the result of political

considerations, nor was it the result of any form of discrimination."  Mot. Exh. L [49-12] at 3.

When Vann appealed that holding, he filed a brief in state court identifying the first issue for

appeal as whether the evidence supported the commission's finding that "the City's Decision to

Terminate was in Good Faith for Cause and not in retaliation for Vann's accusation of racial

discrimination."  *Id.* Exh. J [49-10] at 16 (unaltered).  The circuit court affirmed.  *Id.* Exh. L [49-

12] at 3.

Vann also complains about the quality of the commission's proceedings, primarily that he

was given only one hour to present his case.  Pl.'s Mem. [55] at 1.  If the state proceedings

lacked due process, then Vann would have a point; only constitutionally adequate proceedings

are given preclusive effect.  *Morales*, 2024 WL 3026779, at *4 (rejecting arguments like Vann's

because state proceedings afforded due process).  But Vann makes no legal argument explaining

why the commission proceedings and subsequent state-court appeal lacked due process.  At

most, he says "[t]he Court is respectfully urged to consider, as to procedural due process Vann's

Affidavit, which recounts a multitude of the Defendants' violations and absolute disregard of the

Rules of inetrnal [*sic*] affairs, the Rules of the Civil Service Commission."  Pl.'s Mem. [55] at

10.  Assuming this addresses the commission's hearing—which is unclear—no legal analysis explains why the state proceedings, including the judgment, lacked due process.

The Civil Service Commission found that Vann was fired for good cause and not for discriminatory reasons, and the state court rejected his claim that the termination was retaliatory. Vann may not seek a second opinion on those findings in this Court, so he cannot establish pretext.  *Morales*, 2024 WL 3026779, at *3.  Summary judgment for the City is proper on Vann's Title VII retaliatory-termination claim.[5]

B.     Claims Under Section 1983

As stipulated by the parties, Vann contends that all Defendants violated his rights under the First and Fourteenth Amendments.

1.     First Amendment Retaliation

Vann says he was demoted, placed on the night shift, and fired because he "complained to his superiors that he was being harassed by reason of his race" and for speaking out about racially biased administration of the police department.  Fourth Am. Compl. [42] ¶ 26(i–ii).  The same preclusion argument discussed above bars Vann's termination claim under the First Amendment and § 1983.  *Winn*, 620 F. App'x at 273 (affirming summary judgment on First Amendment retaliation claim).  The other alleged acts of retaliation were not previously litigated so must be decided on the merits.

To prove a First Amendment retaliation claim against his government employer, a plaintiff must show four things: "(1) the plaintiff suffered an adverse employment decision, (2)

---

[5] Because the stipulation limits Vann to retaliatory termination, he may not assert race-based termination.  But as noted, the commission's decision and subsequent state-court judgment would preclude this argument too.  Mot. Exh. L [49-12] at 3.

the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (quoting *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004)).

Defendants say Vann lacks proof on the first, second, and fourth elements and that in any event he was reassigned for valid reasons. Defs.' Mem. [50] at 26–27. Assuming an adverse employment action related to the reassignment, Vann faces a tougher question under the second element—whether he spoke on a matter of public concern. "Lodging a complaint with the EEOC, without further airing of grievances, implicates only the private employment interests of the plaintiff and is not conduct that constitutes speech on a matter of public concern." *Cutrer v. McMillan*, 308 F. App'x 819, 821 (5th Cir. 2009); *accord Allen v. Miss. Dep't of Pub. Safety*, No. 4:20-CV-172-DMB-DAS, 2021 WL 1432308, at *4 (N.D. Miss. Apr. 15, 2021); *Bates v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 826, 847 (S.D. Tex. 2003).

Vann acknowledges that his claim is based on the EEOC complaints and that he made no public statements:

> Filing a charge with the EEOC, was something the City and Department could not tolerate, Vann had to go, had to be terminated. The City could not withstand its becoming public of the many outrageous practices in the Department, not the least of which was its racial discrimination in the Department's command structure. The public, as well as the District Attorney's Office, knew that Vann was an outstanding Detective.

Pl.'s Mem. [55] at 9. This argument essentially confirms that he did not speak publicly on a matter of public concern.

Vann's only other argument on this claim cites a Fifth Circuit opinion when a firefighter's "diatribe" to news media was held to address a matter of public concern. *Id.* at 10

(citing *Moore v. City of Kilgore*, 877 F.2d 364, 371 (5th Cir. 1989)).  But Vann cites no evidence that he spoke out in public like the firefighter did.

Unlike with the Title VII claims, Defendants' argument under the First Amendment does entitle them to summary judgment, and Vann has not shown otherwise.  Summary judgment is therefore granted to all Defendants on this claim.

> 2.    Fourteenth Amendment (Due Process)

Vann's alleged due-process violation is simply that he was "subject[ed] [to] a baseless termination process."  Fourth Am. Compl. [42] ¶ 26(iv).  That claim is also precluded for the same reason as his wrongful-termination claim:  the Court cannot find Vann's termination "baseless" when a state agency and court have held otherwise.  *Winn*, 620 F. App'x at 273.[6]

As to the individual Defendants, the Court finds that even were his claim not precluded, Vann argues no claim against them.  To defeat their assertion of qualified immunity, Vann must show "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct."  *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citation omitted).

Vann begins his argument by defining "clearly established law," but that's not disputed, and he never explains what was clearly established when these events happened.  "To show the

_____

[6] Even if not precluded, Vann's response fails to adequately address Defendants' arguments on the elements for municipal liability.  Vann merely "contends the existence of racial discrimination and a program of retaliation was a policy."  Pl.'s Mem. [55] at 11.  Those conclusory assertions will not defeat summary judgment.  *TIG Ins. Co.*, 276 F.3d at 759.  And he cites no record evidence establishing the essential elements for municipal liability—like the existence of a policy.  *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  At most, he states the details of his own case, but to establish a municipal policy, "[a] plaintiff must do more than describe the incident that gave rise to his injury."  *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (requiring "specific fact[s]").

law is clearly established, a party must 'identify a case where an officer acting under similar circumstances . . . was held to have violated the [Constitution].'" *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) (emphasis omitted) (quoting *D.C. v. Wesby*, 583 U.S. 48, 64 (2018)). Vann doesn't do that.

He then concludes his argument by asking the Court to "[s]ee previously the counter contentions to Defendants' argument the EEOC matter was 'private speech.'" Pl.'s Mem. [55] at 11. But that fails to explain the elements of Vann's procedural-due-process claim or what any individual Defendant did to meet those elements. Having considered the record, the Court finds that Defendants are entitled to summary judgment on Vann's due-process claim.

IV.    Conclusion

The Court has considered all arguments presented by the parties. Any not specifically addressed here would not affect the outcome. Defendants' motion for summary judgment [49] is granted on all of Vann's claims except his Title VII claims of failure to promote and retaliatory transfer, on which summary judgment is denied.

**SO ORDERED AND ADJUDGED** this the 30th day of August, 2024.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE